**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Therese A. Gottermeyer,** | ) | **CASE NO. 1:05 CV 1399** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Norstan, Inc.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 25). This is an age discrimination in employment case. For the following reasons, the motion is GRANTED.

### Facts

Plaintiff, Therese A. Gottermeyer, brought this lawsuit against defendants, Norstan, Inc. (hereafter, Norstan or defendant) and Black Box Corporation. The latter has been dismissed from the case.

In 1982, plaintiff began her employment as a methods analyst in the IS department

1

with a company known as Electronic Engineering. Within several years, Norstan acquired Electronic Engineering and plaintiff became an employee of defendant until her termination in 2003. Norstan was acquired by Black Box Corporation in 2005. (pltf. depo; Alan Perry aff.)

Norstan, a communications solutions and services company that delivered voice and data technologies and services as well as remanufactured equipment to corporate and government end users, was formed in the 1970s. It grew rapidly during the 1980s and 1990s. By January 2000, Norstan had approximately 2600 employees. Norstan, based in Minnesota, had business units and offices throughout the country, including a number of employees in Ohio. (Perry aff.)

During her employment with defendant, plaintiff received numerous promotions and salary increases. At the time of defendant's acquisition of plaintiff's employer, plaintiff was earning around $28,000 to $30,000 annually. At the time of her termination, she was earning a salary of $83,000. (pltf. depo.; Craig Brandt aff. Ex. 4)

Since 2000, until her termination, plaintiff reported directly to Ann Linvill Seidel, Director of Marketing Communications. Plaintiff worked in the marketing communications group along with two other employees, Cheryl Kopka and Alethea Stern. All three were supervised by Seidel. Plaintiff was the only employee in the group who did not work at defendant's headquarters in Minnesota. (Seidel aff.)

According to Alan Perry, defendant's Vice President of Human Resources,

> Norstan was profoundly impacted by the steep downturn in the high tech economy in this country that began in or about 2001. The economic slump caused a sharp drop in the demand for the products and services sold by Norstan. By 2003, Nortsan was sustaining significant losses. ... These economic conditions required Norstan to

2

>implement a series of 'belt-tightening' steps, such as reductions-in-force, in an effort to bring its expense structure in line with anticipated revenues and changing market demand.

(Perry aff.)

Perry further avers the following.  Defendant implemented reductions-in-force (hereafter, RIF) in 2003 and 2004 which resulted in the elimination of more than 300 positions.  The 2003 RIF was implemented beginning in September 2003, when Norstan informed 134 employees in various jobs that their positions were being eliminated on or before October 3, 2003.  Various managers around the country made the decisions as to which positions would be eliminated.  Plaintiff was terminated during this RIF.  Another 90 employees were terminated during the April 2004 RIF.  Prior to the April 2004 RIF, Althea Stern, the sole remaining employee who had been part of the marketing communications group before the 2003 RIF, was transferred to a new role in product marketing and, thus, all positions in the marketing communications group as it existed before the 2003 RIF had been eliminated.  (*Id.*)

Seidel, plaintiff's direct supervisor, made the decision to eliminate plaintiff's position during the fall 2003 RIF.  She avers the following.  After being informed by her supervisor to eliminate at least one position from the marketing communications group, Seidel decided to eliminate plaintiff's position.  Seidel was then told that a second position needed to be eliminated and she decided to terminate Ms. Kopka.  Both positions were eliminated as part of the fall 2003 RIF.  Additionally, Seidel, who was pregnant at the time, contemplated not returning to the workforce and so conferred with Norstan senior management and it was agreed that her position as well would be eliminated as part of the fall 2003 RIF.  Seidel left

3

her employment with defendant in approximately October or November 2003 and has not been employed since.  (Seidel aff.)

Plaintiff presents evidence that Kopka was employed by defendant until August 2004, at which time she voluntarily tendered her resignation.  Stern was terminated as part of a March 2005 reduction in force.  (Doc. 29 Exs. E and F)

At the time of her termination, plaintiff was 59 years old, Seidel was approximately 36 years old, Kopka was approximately 39 years old and Stern was approximately 29 years old.  (Compl. ¶ 3, 20- 22)

In making the decision to terminate plaintiff, Seidel avers that she did not know plaintiff's age and considered the following factors.  A number of the job duties plaintiff had been responsible for performing were being eliminated or significantly scaled back.  Seidel's experience of working with the three employees in the department revealed that plaintiff was not as strong a performer as the others because the others were more productive while plaintiff sometimes resisted taking on new assignments.  The mid-2003 annual performance appraisals (which covered the time period from April 2002 through May 2003) completed by Seidel demonstrate that plaintiff was not as strong an employee as Stern and Kopka as plaintiff received a "fully meets expectations" while the other two received "far exceeds expectations."  Seidel also commented on plaintiff's appraisal, "Continue to focus on improving technical skills. Focus on perception of caution to change."  Additionally, Stern and Kopka had received awards for their job performance in 2002 and 2003 after being nominated by other Norstan employees.  Seidel viewed Stern as the "star performer" in the group and Kopka as "more productive" than plaintiff.  (*Id.* Exs. 1-5)

Plaintiff testified that she had a telephone conversation with Seidel regarding the 2003 appraisal wherein plaintiff inquired as to why she received a "fully meets expectations" when she received "far exceeds expectations" in previous appraisals completed by Seidel. Seidel indicated that plaintiff should not be discouraged and that Seidel had been informed by her superiors to "bring the department in line with a bell-shaped curve and that it was not any kind of a reflection on [plaintiff's] performance." Plaintiff states that she was never put on notice that she would be affected by defendant's financial difficulties and testified that she intended to work until she was 66 years old. Shortly before her termination, plaintiff participated in computer and other training as desired by her superiors. Having no idea that she would lose her job, plaintiff had entered into a contract to purchase a new home in September 2003. She canceled the contract upon learning of her termination. (pltf. depo. 91-110)

Perry avers that at the time of the 2003 RIF, Norstan had a company policy, called the Workforce Reduction Policy, under which each person affected by the RIF was offered severance pay and job outplacement assistance on the condition that a general release of potential claims was signed. The Release and Confidentiality Agreement, among other claims, included a waiver of age discrimination claims. (Perry aff.; Brandt aff. Exs. 7-9)

Plaintiff signed the release on November 1, 2003 but struck the portion regarding waiver of age discrimination claims, and stated thereon that the release excluded waiver of age discrimination claims. Plaintiff was the only affected employee who did not sign the release. By letter of November 7, 2003, defendant provided to plaintiff's counsel an OWBPA (Older Workers Benefit Protection Act) listing for the 2003 RIF which identified job positions

5

and ages of employees who were and were not selected for elimination. By letter of December 4, 2003, defendant advised plaintiff's counsel that it rejected the modified release document tendered by plaintiff. As such, plaintiff did not receive any severance pay. (Perry aff.; Brandt aff. Exs. 10-12; pltf. depo. 125-126)

After filing an EEOC charge, plaintiff filed this Complaint setting forth five claims. Count One alleges that plaintiff's termination violates the Age Discrimination in Employment Act (ADEA). Count Two alleges that defendant's Workforce Reduction Policy violates the ADEA. Count Three alleges that defendant's Workforce Reduction Policy violates the Older Workers Benefit Protection Act. Count Four alleges a violation of ERISA. Count Five alleges a violation of Ohio's law against age discrimination.

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242,

248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

7

**(1) Age Discrimination**

Counts One and Five allege that plaintiff's termination violated the ADEA and Ohio's statute prohibiting age discrimination in employment.

Absent direct evidence of discrimination, a plaintiff claiming that she was unlawfully terminated in violation of the ADEA must establish a prima facie case of age discrimination by showing that: 1) the employee was in the protected age class -i.e., over forty years old; 2) the employee was qualified for the position; 3) the employee was terminated; and 4) the employee was replaced by a younger person.  Where a termination occurs during a reduction-in-force, "the fourth prong is modified so that the plaintiff must provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.' " *Rowan v. Lockheed Martin Energy Systems, Inc.,* 360 F.3d 544 (6th Cir. 2004) (citations omitted), *Williams v. Tyco Electric Corporation,* 161 Fed. Appx. 526 (6th Cir. 2006) and *Gronek v. Wesco Distribution, Inc.,* 2005 WL 293671 (6th Cir. Feb.8, 2005) (recognizing that a plaintiff in an RIF case must satisfy "the heightened burden" applicable to these cases).

If a plaintiff meets her prima facie burden, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. If the employer articulates such a reason, the burden shifts back to the plaintiff to show that this reason is pretextual.  *Id.*

Claims brought pursuant to Ohio's age discrimination law are resolved under the same analysis applied to ADEA claims.  *Herbick v. Salem City School Dist. Bd. of Educ*., 151 Fed.Appx. 463, 467 (6th Cir. 2005) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154

8

F.3d 344, 357 (6th Cir.1998) ).

Defendant does not appear to dispute that plaintiff satisfies the first three elements of the prima facie case. Therefore, the issue is whether plaintiff has provided "additional direct, circumstantial, or statistical evidence tending to indicate that [defendant] singled [her] out for discharge for impermissible reasons."

Defendant submits the expert witness report of Bryan J. Pesta, Ph.D., SPHR. (Craig Brand aff. Ex. 6) Pesta was provided with data containing information on the positions Norstan considered for elimination in connection with the 2003 RIF which included the job title for each position considered for elimination, the age of the employee and whether or not the position was eliminated in connection with the RIF. Pesta analyzed the data and applied three statistical tests. He concluded:

> 1) The RIF data do not support a claim of discrimination based on age, intentional or otherwise. The difference in discharge rates for older and younger employees is trivial, and well within what would be expected if only change (i.e., not age) were operating to produce the data.
>
> 2) Norstan's 2003 RIF did not result in disparate impact against age-protected individuals.

(*Id.*) He then stated an "overall conclusion":

> In my expert opinion, the statistical tests I conducted on the RIF data show that age was not a factor in determining which positions were eliminated and which were not. No evidence of disparate impact exists in the data set, or can the data support a claim of disparate treatment based on age. In sum, no statistical evidence exists supporting a claim that Nortan's decision making in connection with its 2003 RIF was influenced by the age of its employees.

(*Id.*)

9

Plaintiff asserts that "a thorough statistical analysis" of the same data[1] analyzed by Pesta "demonstrates that age was at least a factor and potentially the motivating factor in selecting which employees would be part of the RIF in 2003..." Plaintiff further asserts, "Based on the statistics submitted by Defendant, a reasonable juror can conclude that age was an underlying factor in determining which employees were terminated." Plaintiff also states that the "statistics show that employees of the Defendant that were protected under the ADEA ... were more likely to be terminated than those who were not protected." (Doc. 27 at 14, 6)

Plaintiff, however, did not serve "any expert witness disclosure from any person purporting to be an expert statistician." (Craig Brandt aff.¶ 7) Thus, plaintiff never engaged any expert witness to conduct or submit a statistical analysis. Plaintiff simply points to the percentages of age protected workers (almost 70%) and those not age protected (30%) who were considered for termination in the fall 2003 RIF. Of those who were ultimately selected for termination, 75% were age protected and almost 25% were not age protected. Plaintiff then concludes that age was obviously a factor in the decision as to which employees were terminated. This Court agrees with defendant that plaintiff's conclusions are not based on any sound methodology.

Defendant's expert, Pesta, on the other hand, based his conclusions on a sound methodology. Pesta first looked at the simple percentages (as plaintiff did) of employees considered for termination (69.6% age protected, 30.4% not age protected) and those selected for termination (75.4% age protected, 24.6% not age protected). He then stated:

---

[1] Defendant's Older Workers Benefit Protection Act (OWBPA) informational disclosure for the 2003 RIF. (Craig Brand aff. Ex. 10; Doc. 27 Ex. B)

10

> Since 69.6% of the pool was age protected, chance dictates that about 69.6% of the discharged employees should be age protected as well. On the other hand, if the percentage of discharged employees who were age protected differs significantly from 69.6%, then something other than chance (i.e., including possibly age discrimination) was likely operating to produce the difference.
>
> I note, however, that the percentage of terminated workers who were older (75.4%) is not much different than what would be expected by chance factors alone (69.6%). The difference between expected and actual values (i.e., 75.4% - 69.6% = 5.8%) seems nominal, but one cannot tell if statistical evidence of bias is present just by looking at overall differences in percentages.

(Brandt aff. Ex. 6)

Pesta accordingly recognized that "[v]arious statistical tests exist to determine whether a difference is indeed statistically significant." *Id.* He proceeded to identify three statistical tests (standard deviation analysis, chi-square test and Z test for single samples) which he states are widely used in the field of statistics and to analyze whether or not employment practices may reflect unlawful job discrimination. Pesta analyzed the data using all three tests and found that they resulted in the same conclusions, set forth above (i.e., age was not a factor in determining which positions were eliminated in the RIF).

Plaintiff does not discuss Pesta's report, analysis, or conclusions. Pesta's conclusion (based on widely used statistical analysis) that age was not a factor in determining which positions were eliminated and which were not is, therefore, not controverted by plaintiff. Thus, plaintiff has not come forward with statistical evidence demonstrating age discrimination.

Plaintiff also points to a list of defendant's employees in 2003 who were not considered for the RIF. (Doc. 29 Ex. C) Plaintiff states that these employees performed the same and/or similar duties as those selected for termination. Plaintiff asserts that of those not

11

considered for termination, 58% were age protected- a percentage less than those age protected employees who were considered for termination. As defendant points out, however, the Sixth Circuit has noted that it is proper to exclude from a statistical study individuals who were "apparently not considered in the restructuring." *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1567 (6th Cir. 1990). Additionally, while plaintiff states that the persons included in the group which was not considered for termination in the fall 2003 RIF had the same and/or similar duties and responsibilities as those selected for termination, she fails to present any evidence supporting this statement.

For these reasons, plaintiff has not presented probative statistical evidence demonstrating age discrimination. Absent statistical evidence that age was a factor, plaintiff must come forward with direct or circumstantial evidence.

Plaintiff does not argue that she has direct evidence and admitted at deposition that while working with her, Ms. Seidel never made any age related comments to plaintiff. (pltf. depo. 236)

Plaintiff appears to assert that she has circumstantial evidence supported by the fact that defendant retained Kopka and Stern, both significantly younger than plaintiff and with fewer years of experience. This fact alone is insufficient because "[a]n employer is free to retain the younger, less senior employee if the employer reasonably believes he or she is better qualified for the position." *Barnes,* 896 F.2d at 1471. Plaintiff has not presented evidence to contest Seidel's averments that in her experience of working with the three employees in the department, plaintiff was not as strong a performer as the others because the others were more productive while plaintiff sometimes resisted taking on new assignments;

12

the mid-2003 annual performance appraisals completed by Seidel gave Stern and Kopka reviews of "far exceeds expectations" while plaintiff received a "fully meets expectations"[2]; Seidel commented on plaintiff's appraisal regarding plaintiff's need to improve her technical skills and focus on the perception of her reluctance towards change; Stern and Kopka had received awards for their job performance in 2002 and 2003; and Seidel viewed Stern as the "star performer" in the group and Kopka as "more productive" than plaintiff.  It is also not disputed that plaintiff  was the only employee in the group who did not work at defendant's headquarters in Minnesota. Seidel avers that in 2003 she was aware of defendant's informal objective of consolidating functions, such as marketing, to positions based at the company headquarters.  (Seidel aff. ¶ 13)

Furthermore, "While the ADEA bars discrimination based upon age, it does not create an affirmative duty to retain older workers whenever a reduction in staff becomes necessary." *Stipkala v. American Red Cross*, 2000 WL 712378 (6th Cir. May 23, 2000) (citing *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir.1991). "Nor was the ADEA intended to protect older workers from the often harsh economic realties of common business decisions and corporate reorganizations."  *Id.* (citing *Allen v. Diebold, Inc*., 33 F.3d 674 (6th Cir.1994)).  Thus, merely because plaintiff was the oldest in the department with the most seniority, defendant was not obligated to retain her on this basis.

For these reasons, plaintiff fails to establish a prima facie case because she has not

---

[2]     While plaintiff testified that she spoke with Seidel about the evaluation and was assured that she should not be discouraged and that Seidel needed to comply with a curve, plaintiff cannot dispute that the other two workers received the higher evaluation and had received awards for their job performance.

provided additional direct, circumstantial, or statistical evidence tending to indicate that defendant singled her out for discharge for impermissible reasons.

Even had plaintiff established a prima facie case, defendant has asserted a legitimate, non-discriminatory reason for her termination, i.e, the RIF.  Plaintiff does not dispute the circumstances presented by defendant's evidence which demonstrate the economic necessity of the RIF.  Nor does plaintiff demonstrate that the reason is pretextual as she relies on her arguments presented above which this Court has determined to be unpersuasive.

Therefore, summary judgment is warranted on Counts One and Five.

### (2) The Workforce Reduction Policy

#### (a) disparate impact

Norstan maintained a Workforce Reduction Policy (sometimes referred to hereafter as the policy), under which each person affected by the RIF was offered severance pay and job outplacement assistance on the condition that a general release of potential claims was filed. (Perry aff. ¶ 12; Brandt aff. Exs. 7-9)   Plaintiff refused to release any claim for age discrimination and defendant, therefore, informed her counsel that it was not obligated to provide severance pay in the absence of the signed general release.  (Perry aff. ¶ 14; pltf. depo. 125-126)

Count Two alleges that defendant's policy violates the ADEA in that it disparately impacts older workers.

Defendant argues that this count fails to state a claim. For the following reasons, this Court agrees.

In *DiBiase v. SmithKline Becham Corporation,* 48 F.3d 719 (3rd Cir. 1995), the court

14

found that a separation benefit plan providing enhanced benefits to employees terminated in a RIF which was conditioned upon the signing of a general release (which expressly included waiver of age discrimination claims) did not violate the ADEA under either a disparate treatment or disparate impact theory although the release did not provide any additional consideration to ADEA-protected workers.  The Eleventh Circuit agreed in *Griffin v. Kraft General Foods,* 62 F.3d 368 (11th Cir. 1995), wherein it also rejected plaintiffs' contention that the termination plan violated the ADEA where it required the employees to execute a general release which explicitly included waiver of ADEA claims before benefits could be received.

Plaintiff does not address *DiBiase* or *Griffin*, but relies on the Supreme Court's decision in *Smith v. City of Jackson,* 544 U.S. 228 (2005).  *Smith*, however, is notable merely because it recognized that the ADEA authorizes recovery on a disparate impact theory.  In *Smith,* plaintiffs, age-protected police officers and public safety officers employed by the city, contended that their salary increases violated the ADEA because there were less generous than those offered to officers under the age of 40.   Although the Court recognized the viability of the disparate impact theory of recovery in ADEA cases, it concluded that plaintiffs did not set forth such a valid claim because they did not show that the plan had an adverse impact on older workers. *Smith* does not negate the holdings of *DiBiase* or *Griffin*.

Based on the holdings of these two circuit decisions, the Court does not find that the policy at issue here disparately impacts older workers.  Summary judgment is, therefore, warranted as to Count Two.

**(b) OWBPA**

Count Three alleges that defendant's Workforce Reduction Policy violates the Older Workers Benefit Protection Act.

The OWBPA became effective in 1990 as an amendment to the ADEA, ensuring "that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA." *Long v. Sears Roebuck & Company,* 105 F.3d 1529 (3rd Cir. 1997).  The Act requires that ADEA waivers be made knowingly and voluntarily and defines those circumstances in which ADEA waivers would be permitted, setting forth eight minimum criteria which must be met.  The Act puts the onus on the party asserting the validity of the waiver to show that the waiver was knowing and voluntary.  *Id.* (citing 29 U.S.C. § 626(f) ).

Plaintiff argues that certain of the statutory minimum requirements were not met and, consequently, the OWBPA has been violated.  As pointed out by defendant, however, this section of the Act is not at issue because plaintiff never signed the release of an ADEA claim.  Thus, the Court need not resolve whether an executed release of an age discrimination claim is valid.  Plaintiff is not seeking to demonstrate that the release is invalid so that she may assert an age discrimination claim.  Rather, plaintiff has asserted such a claim and it has been addressed on its merits.  Defendant is not asserting the validity of the waiver as an affirmative defense to the age discrimination claim because plaintiff never executed such a waiver.

For these reasons, summary judgment on Count Three is warranted.

**(c) ERISA**

Count Four asserts that defendant's denial of severance benefits to plaintiff because of her refusal to execute the release waiving her age discrimination claims violates ERISA, 29 U.S.C. § 1132(1)(B).

16

Defendant argues that the plaintiff fails to state a claim under this section of ERISA because the Workforce Reduction Policy is not a "plan" within the scope of ERISA. In *Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987), the Supreme Court recognized that the determining factor of an ERISA benefit plan is that it requires "an ongoing administrative program to meet the employer's obligation." ERISA is implicated only when a severance plan places "periodic demands" on the employer's assets and although a one-time, lump-sum payment constitutes a benefit, it does not constitute a benefit plan implicating ERISA because this single event requires no administrative scheme to meet the employer's obligation. *Id.* Defendant asserts that because its policy provides for a specified payment and does not invoke an ongoing administrative scheme, it is not an ERISA plan.

Plaintiff does not address this law but only asserts that defendant wrongly denied her severance benefits owed and, therefore, contravenes ERISA. Even assuming the policy does constitute an ERISA plan, it is not disputed that plaintiff did not sign the release. Execution of the release is an express requirement under the policy in order to be entitled to "receive the workforce reduction severance pay and/or any other services." (Brandt aff. Exs. 7-9) Defendant's refusal to pay plaintiff benefits is, therefore, consistent with the terms of the plan.

For these reasons, summary judgment is warranted as to Count Four.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.


    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 7/11/06